The next matter, number 24-1126, Kyle Kwoka et al. versus Enterprise Rent-A-Car Company of Boston, LLC et al. At this time, would counsel for the appellants please introduce themselves on the record to begin? May it please the court, my name is Thomas Fowler for the opt-in plaintiffs in this matter, and I would like to reserve three minutes for rebuttal. You may. Go ahead. Good afternoon. This case is about fundamental fairness and the proper functioning of the collective action mechanism of the Fair Labor Standards Act. And there are two compelling reasons why the district court's decision, which dismissed the claims of nearly 1,500 opt-in plaintiffs, should be reversed. The first is that the district court's decision refusing to apply equitable tolling to the claims of these opt-in plaintiffs flies in the face of the equitable broad remedial purpose of the FLSA. And the second reason is that the district court's decision was blatantly out of step with the majority of courts that have found in similar circumstances where there has been a significant delay of authorization for notice to issue to potential opt-in plaintiffs that that is a justification for the application of equitable tolling. So going to the FLSA first, the collective action mechanism in the FLSA is vitally important for employees who seek to vindicate their rights under the FLSA to have overtime and minimum wage. As the Supreme Court has specifically stated in Hoffman-LaRoche v. Sperling, the collective action mechanism furthers the purposes of the FLSA, and it does that by- And the provisions that we're talking about were actually added by the Portal to Portal Act to restrict the scope of the FLSA, right? That is true, but I do not think that that impacts the applicability of equitable tolling here because when Congress enacted the Portal to Portal Act, it left- But the plain language of the Portal to Portal Act, the plain language of that is the action that they choose to opt in. Now equitable tolling exists, but that's the premise from which we start, correct? Absolutely, yes. And these people all filed long after that ended. That is true. And so then we have a two-pronged question, diligence and extraordinary reason, right? That is also true. So focus me on the diligence. What did these individual people do to show diligence? I think that frames the question incorrectly. The question is not what did the individual people do. In the context of a collective action, and again, going back to what the Supreme Court said about the purpose of the collective action mechanism here, it allows people to band together and do this. And an essential part of the Portal to Portal Act is to have timely and accurate notice of the case issue so that people will know that the case exists. Why is that? I'm somebody living in Las Vegas, and I'm an enterprise renter car assistant manager, and this case is going on in Boston, and whatever's happening there is happening. I have time to bring my case. I might get to join that. I could start my own collective action if I felt like it. Why isn't it- I don't understand how you get to- it's the lead plaintiff that we look at for the diligence. It seems like the whole structure of this thing is the person is supposed to exercise diligence to bring the claim. Respectfully, I disagree with that framing. When you are an individual person working for enterprise, you have no way to know that a case exists. And cases that frame it, like Your Honor proposes, such as the Sandos case in the Fifth Circuit, are doing so because you're dealing with claims that are fairly clear in terms that there is a violation. So, for example, in the Sandos case, it was clear that these people were just not getting paid overtime. Here, it's different, and the reason that it's different is because we have an overtime misclassification claim, which is inherently complex and very legally difficult for a lay person who's an assistant branch manager in Las Vegas to parse. They would have no reason to- It's about the case that goes right to this. So there's a document that's talked about around the edges, which are these FAQs, which seems completely misleading to me. It says, we think we did nothing wrong, but you didn't focus- did that go to everybody? It's not clear to me- that could be a very important fact in the diligence inquiry, but it's kind of at the periphery, and it's not clear who got it. What is the situation with that document? Okay, so the situation with that document is that at the time that we were dealing with this complaint, there was not a factual record with respect to who got the document. We know that everyone in Massachusetts got the document through depositions, which have proceeded in recent months. We also know that essentially all of the other regional subsidiaries released a version of that document with similar language, but that is not in the record. And the problem with that question is, what is supposed to happen in a case is that conditional certification is supposed to be decided early on, and we are allowing people, as long as the plaintiff has met the lenient burden to opt-in, and then we can sort out, are these people appropriately in the case? So it's- If you follow these affidavits, over a thousand of them, I would think, in preparing that, you'd say, did you get these misleading FAQs? I mean, did that happen? So we got the declarations which said, I did not know about this case, so I will grant the fact that those declarations do not state one way or the other if we got the misleading FAQs. It seems, drawing on American Pipe, the aim, if I'm understanding it, is that what they need to know about is not their own claim. They need to know about someone else's claim that's purporting to be a collective action they can jump in on. And the statute clearly is contemplating that there will be such a case, and that's a kind of hard thing for people to know about. They may know their own situations, but how do they know there's a suit out there that's asking for people to join, and the way you would know would be the notice. Now, American Pipe, you could say, is sort of a similar idea, and the way it handled the problem was to say the tolling begins upon the filing of the complaint by the class representative. Of course, that's not an opt-in situation, so there's a whole bunch of logic to that. But the American Pipe starts by saying, before the amended Rule 23, we had spurious class actions, or what were called spurious class actions, under the old Rule 23, and that there was a divide in the lower courts as to whether or not, in that situation, too, we would toll it for purposes of facilitating the aims of the Rule 23 procedure. You could imagine a very similar logic might apply to this, because this is effectively a spurious class action. In fact, I think the history of it kind of referred to this as a spurious class action. But you're not arguing to us that the filing of the complaint is the tolling action. So I guess I'm just a little bit at sea. Maybe that's a good argument, but in the absence of that argument, where would we begin the date for knowing the notice, and what tools would I use for assessing that? They're not the tools that relate to the equitable tolling inquiry, because we're now focused on whether the court did its job badly. So I just don't really grasp the contention. Contention is that there are, I think, at least two reasonable parts to begin where the tolling period would be. I agree with you that the filing of the complaint itself is not the operative action that would toll it, because I think the Portal Act actually precludes that, and the rule is that when you opt, that it specifically says that the filing of the complaint does not toll the limitations periods for all the opt-in plaintiffs. But what you do have is on the very same day that the complaint was filed, we filed the motion for conditional certification. And in that motion, we explained that time is a ticking, and that it is important to act quickly on this motion. And that's not what the district court did. And that leads me to the second potential place where tolling could begin that I think would be quite reasonable, which is the defendants responded to that motion by moving to stay it during the pendency of their motion to dismiss. And we opposed that motion to stay, and we said we should go ahead, courts in this district and in this circuit, act promptly on motions for conditional certification. But your honor, if you do stay this motion, then you should grant equitable tolling. And that was, I believe, in March of 2018. So to answer your question, I think either one of those would certainly justify tolling. And again, there are district courts across the country that have dealt with this. I just don't understand the logic of it. It's that the Portal to Portal Act doesn't object to that approach, even though it would object to the approach of tolling at the time of the filing? That's true. The Portal to Portal Act is silent as to equitable tolling. And the presumption in federal statutes is that unless it specifically precludes equitable tolling. I'm just trying to understand if that's right. How are you drawing the line that the Portal to Portal Act stops it from being done at the time of the filing of the complaint, but not at this later time? Because courts have consistently found, and this is true sort of across the board, that you can have equitable tolling of FLSA claims for opt-in plaintiffs, regardless of the fact that the Portal to Portal Act does not make for automatic tolling via statute when the complaint is filed. And it's an equitable doctrine. Well, isn't one of the statute's intended beneficiaries the worker who actually knows he may have a claim, but is daunted, deterred by the cost and involvement of bringing it as an individual, and the common action provides an economy of scale and aggregation that makes that possible? So until they know there's one of these actions pending, they've got nothing to do. Right. And I think... If you didn't have tolling, a district court could, just by waiting two years every time, wipe out all those claims. Right. I absolutely agree with that, if I may finish. I absolutely agree with that characterization. And I think that that is one reason why the Supreme Court and Hoffman said that in order to actually realize the benefits of the collective action, you have to have timely and accurate notice. And that is something that did not happen in this case. Notice was not authorized for four and a half years. But I just wonder, what do you imagine that inquiry looks like, then? Because if I'm understanding it, you're saying that the equitable tolling is dependent on us making an assessment that there was not timely notification. And is that abusive discretion? Is that... And what are the factors that we're supposed to look at that tell us that happened? And then, does that only preserve those claims from the moment that the abusive waiting occurred? Or does it sort of help everybody who even wasn't directly affected by the untimeliness? Because there's a certain period that it is allowed to wait, and a bunch of these claims would have expired during that period of time. So I just don't know, practically, what are you asking a reviewing court to do to set up the law in this area? I think there are a couple things that the court can do. First, I think that if you look at the district court decisions that address equitable tolling in this context, what they are doing is following the traditional framework of equitable tolling as set forth by the Supreme Court, and most recently in Menominee, where you do, one, ask are there extraordinary circumstances that have prevented people from opting in? In this case, we say, yes, absolutely. Notice didn't issue until literally every opt-in plaintiff was out of the limitations period, and two, was there reasonable diligence? And the court in DePalma versus New Jersey, with respect to the reasonable diligence inquiry, said, even if the necessary facts were available to me, I would decline to do a plaintiff by plaintiff equitable tolling analysis as to the five pre-notice opt-ins or the 101 post-notice opt-ins. The disparity between those numbers suggests that notice was both desirable and efficacious, and the response to the notice confirms the benefits and efficiencies of collective action under the FLSA, which I am reluctant to undermine by putting the burden on potential class members to act individually. So what you do instead is you look at the diligence of the named plaintiff here, and I understand that the district court said that the named plaintiff was not diligent, but I strongly disagree, given the fact that we moved for conditional certification on the first day that we possibly could, and then repeatedly raised the need for equitable tolling throughout the case, and so that's the first thing. The second thing is you could direct district courts that motions for conditional certification should be decided at the outset of the case when they are timely filed, and that is before reaching the merits, and typically that's what district courts already do, but this is something that you have to decide first, because otherwise the rights of all these people might be missed.  Thank you. Thank you. Thank you, counsel. At this time, would counsel for the appellees please introduce themselves on the record to begin? Good afternoon, your honors. Jason Schwartz on behalf of Enterprise Rent-A-Car of Boston and Enterprise Holdings Company. I'd like to anchor the discussion, if I might, in what I think counsel agrees are the two core menominee factors. Here, this court's review is for abuse of discretion. The district court made detailed factual findings after inviting the submission of evidence not only by the named plaintiff, but by the opt-ins, and made findings that go to each of the alternative theories that counsel suggests that this court consider. So under the first factor, the reasonable diligence, the district court made findings both as to the opt-ins diligence and as to Mr. Baugh's diligence. As to the opt-ins, 283 of them submitted nothing when they were ordered by the court to submit evidence, 1,186 submitted the form declaration, six submitted individual declarations. No opt-in submitted evidence that said they even received the memo, Judge Ephraim, much less that they relied upon it, and in fact the only evidence we have is from Plaintiff Baugh who said he read the memo and it caused him to file his lawsuit. The six opt-ins who submitted specific evidence said they felt they had been paid unfairly. In fact, one went so far as to calculate her hourly rate and concluded that it was unfair. One of the opt-ins who submitted a specific declaration said that the reason she was delayed in bringing a claim was because she couldn't get up to her attic in time. She had delayed going to the attic to find her records. That's obviously not reasonable diligence by any of those people. What's our framework of diligence? If we pause it for a second, an intended beneficiary of this statute is a subgroup of workers who may well or may not know they have a claim but are not going to bring it individually, would only bring it if they could group together. If that were the intended beneficiaries, then wouldn't it be rational to measure diligence by asking once they were made aware that there was a collective action, did they then act diligently? Your Honor, I think the answer to that question is no for a number of reasons. Number one, this court held in Kale, which was interpreting the Age Act, which borrows the exact same provisions of Section 216B, that if the employer posts a notice, which we put evidence in that we did, that everybody is on notice of their rights, that the 216B and C framework is different from a Rule 23 class action. That's why American Pipe doesn't apply. Congress specifically designed that provision, as Judge Aframe noted, in order to limit representative actions. American Pipes expressed recognition of pre-Rule 23 spurious class action cases that sometimes held that they would toll the statute of limitations based on the filing of the complaint, even though it was just like this, just an invitation for joinder. The court says, we never decided that question, and thank God we don't have to today because we've got Rule 23 and we can say it's a representative, but it doesn't say that you couldn't toll in that circumstance. So why wouldn't we just say this is such a circumstance? Your Honor, I think we can't do that in this case, number one, because counsel conceded that you wouldn't apply American Pipe at the beginning of the filing. Number two, because Congress gave a specific command here in 216B and 216C. They say that the timeliness is judged for an opt-in from the time that they filed their notice of consent. So we can't override that congressional command absent some extraordinary circumstance under Menominee. That's true of every equitable tolling case there is. Of course, Your Honor, and here you would be saying that the extraordinary circumstance is simply the filing of a putative representative action under the FLSA. As the courts delay in failing to send out the notice. Let me speak to the court's delay, because I think in this case, the fact findings subject to the clear error review prevent that, even if that were a rule that you were entertaining. So the district court entertained the notion that, well, perhaps court delay could be considered. In order to make any of the opt-in's claims timely, you would need 954 days of tolling. The district court found that not all of those days were due to the court's delay, and let me just give you some of the underlying facts that support that finding. Mr. Baugh himself sought 131 days of extensions of time. Those were obviously not due to the court's failing. In addition to that, Mr. Baugh filed his initial complaint naming Enterprise Holdings, which is the only basis for the nationwide collective. He has a Rule 23 Massachusetts class action that continues with American pipe tolling. The only basis for nationwide was naming the parent. He named the parent only singly under a theory under a Fourth Circuit case called Salinas, which goes directly contrary to controlling First Circuit law in Bay State. He didn't plead it as an alternative. He said, I meet the Salinas factors. So the district court, in a reasonable exercise of its discretion, said, well, I'm not going to send notice yet because this is procedurally defective, this first complaint, and he dismissed that complaint. This court found in Jorge and in Wilson, where it's the plaintiff's own fault due to a procedural defect that equitable tolling cannot be applied. Then you go through, and they said there's four years of delay that is attributable to the court. That's just not true, Your Honor. So first you have this complaint against EHI under a case that is contrary to controlling precedent in this circuit. Then you have a second complaint that has a serious Rule 11 problem. We put the plaintiff on notice of that in September of 2018. The complaint that is operative is not filed until March of 2020, after the statute of limitations had run for every single opt-in. Mr. Baugh is now the only timely claim. I'm afraid the diversion of this point then starts to bring in the question of prejudice to the defendant in the sense that if delay is the test, and it's kind of uncertain when the delay hits because we're not measuring it from the time of the initial filing. That's exactly right. You don't know the universe of opt-ins that you're dealing with. You won't really know what that universe is in any kind of clear way or who exactly are the people that you're up against because there's no, in American pipe, that's not a problem because the class is defined at the moment of the filing. So you know the universe. Here you just know it's similarly situated, but you don't really know how many people that is, what you're up against. If the delay is our metric and it's kind of rolling, I think you run into that prejudice aspect of the... That's 100% correct, Your Honor. In this case, these are at minimum seven-year-old claims from persons we didn't know who would opt-in and who would be deemed similarly situated. That's why this 216B mechanism is much different from a Rule 23 class action. The district court found, again, he made a number of alternative factual findings subject to a clear error and he did make a finding on prejudice that even if the extraordinary circumstances and the reasonable diligence were satisfied, which he found they weren't, there would be prejudice to enterprise because now people we didn't know are coming forward seven years after the fact and we've got to produce witnesses who remember what their duties were on a day-to-day basis. Your answer to Judge Catt is practical, but if you're right and the only kind of equitable tolling is the kind that you're describing, which is sort of retail equitable tolling, then the judge who has the case and just sits on the case for two years, then everybody's  Is it just tough luck? It's not, Your Honor, because even if we were to recognize that court delay could potentially be an extraordinary circumstance, the detailed factual findings in this case find that the 954 days were not all attributed to the court, so that question's not presented. It's not typically presented in cases like this. You don't see these cases on appeal. You've got Sandoz in the Fifth Circuit and this case here in the First Circuit and that's because typically the motion is filed early, the notice goes out. Here you had procedural defects that were attributed to the named plaintiff and that was again a complaint that was defective from the start. Its only glue for a nationwide action was against the parent who was improperly named and dismissed. That's why it was delayed and the idea that the plaintiff sought tolling, that's actually not true either. If you look at the record in this case, what happened was we sought a 30-day extension to file our first motion to dismiss. The plaintiff asked for and we stipulated a 30 days of tolling. Then the case proceeded. The plaintiff raised the issue of the ticking clock in a September 2018 hearing and the district court said if you want to raise that issue, you bring a motion. They didn't bring a motion for tolling even though they knew they could do it. The same council had brought such a motion in the Tidd case before the District of Massachusetts so they knew that was in their toolkit and they just didn't do it. That again is a lack of diligence. There was an opportunity to protect these absent potential opt-ins and it just wasn't taken. That's a procedural default that is not attributable to enterprise and is not a grounds to invoke the court's equitable power to toll a statute of limitations that is already generous on its face and designed by the Portal to Portal Act to prevent the aggregation of claims in the same way as a class action. It's actually the opposite of its purpose. It was enterprise that asked the court to stay the certification motion. That's correct, your honor. The certification motion and our motion to dismiss were pending at the same time. The court was convinced and granted that stay. Why not use that stay as the date where the tolling would start? Because Mr. Bob did not. As you said, even though there's a pending motion and even though it's been pending for what couple of months, we're going to stop the pursuit of that. One could argue that it would therefore be appropriate to stop the running of the clock as of that date. Couple points, your honor. Number one, as a practical matter, that wouldn't give you the 954 days necessary to make any opt-ins claim timely. Number two... That would make them all timely if the court had... Be told at the moment of the stay request. Through the present, correct. But the district court ruled on the motion for conditional certification at the same time as it ruled on the motion to dismiss in September of 2018. By the way, the only reason that hearing happened so late was because Mr. Bob's counsel was not available for the initially scheduled hearing, and so the district court rescheduled it. In theory, if you do it at the moment of the stay request, then they three weeks later resolve everything. I don't know quite what that does to the tolling clock. That's right, your honor. But then they don't do the notice. Then they haven't... I mean, it's just hard to know what our... And this case is a great illustration of that, because in September of 2018, the district court denied conditional certification, saying the glue for nationwide is gone because you wrongly named the parent. It was your procedural default to rely on the wrong test. And then they didn't bring the motion for conditional certification again for another two years. And they're going to blame the court for that. They had every right to bring any motion they wanted to to the court's attention, even as you all pointed out, your honor, in the last case, to come to this court for mandamus if they thought the district court wasn't doing its job. They didn't do any of those things. And so under this court's precedence with respect to procedural defaults, that is a failure to meet the elements of equitable tolling. One way to think about it is that we could effectively almost like collaterally in addressing the equitable tolling claim of the opt-ins, who obviously themselves couldn't have brought the mandamus, assess whether the district court so erred in not doing certification earlier that it's an extraordinary circumstance. But absent doing that, I take it you're saying it's hard to see how we can assess the district court as having done something extraordinary and wrong that could meet the equitable tolling test. Agreed, your honor. It's also a two-part test that requires reasonable diligence. So even if it were an extraordinary circumstance. And then furthermore, what I would say, your honor, is this court recently made clear in Waters and the Supreme Court made clear in Hoffman-LaRoche, the notice process itself is a discretionary act by the district court. There is no right to notice. People can opt into a case before notice, after notice, plaintiff's lawyers in these cases. By the way, it's one of the most often filed cases, I think about 6,000 in the last reported year. Plaintiff's lawyers regularly solicit people to opt into cases without court-approved notice. And here, again, under abuse of discretion, even if you were somehow to review the interlocutory ruling about notice, the district court made a reasonable choice, which is notice in this particular case to a nationwide class is premised on a joint employment theory of Enterprise Holdings, not just the Boston Company. And that theory was pled with facts and legal theory only under the Fourth Circuit's Salinas test, which runs right into controlling First Circuit precedent in Bay State. None of this makes any sense if you follow what I think Judge Cayata was saying, which is this whole scheme is to protect others who are situated. So we've talked for 10 minutes about what lawyers did, but it has absolutely nothing to do with all these people who have lost their rights. They have no control over these lawyers. They don't know what's happening with these lawyers. So it really comes down to this question of, who are we trying to protect with this equitable tolling idea? Because all this stuff about the lawyers really has nothing to do with anything. To me, it's these people, and what do we expect of them? And if we expect them to go out and follow their own rights and their own trail of evidence and bring a case, that leads to one conclusion. But if you think that this scheme is designed to protect classes of people and let them bring these claims, then I think you would think about it completely differently. Which is the right way to think about it? So Your Honor, two points. Number one, I think the right way to think about it is, as you pointed out earlier, the Portal to Portal Act was actually designed to prevent large representative actions and to protect employers. So whereas the whole statute has a remedial purpose, the purpose of 216B and C, the provisions that require opt-in and say the clock doesn't start until you opt-in or initiate your own claim, were designed to protect employers. Number two, even under the traditional factors, each and every one of those 1,500 people who had the right to submit evidence to Judge Wolf, the only ones who submitted any evidence about facts said they knew everything they needed to know. They knew what they were paid. They knew their hours. They knew their duties. And some of them even said they thought they were paid unfairly. They had three years to act. Thank you, Your Honor. Thank you, Counsel. We have a three-minute rebuttal from the appellant. Please reintroduce yourself on the record to begin. Thomas Fowler for the opt-in plaintiffs. So I wanted to start by correcting a factual misstatement by the defendant here, and that is this accusation that we never requested equitable tolling. That's simply not true. I would refer you to Joint Appendix page 158. This was the response that we submitted to the defendant's request to stay on motion for conditional certification. And we specifically on that page ask for tolling if the court grants the stay. So to me, that makes a lot of sense to use that date or the date at least that the stay was granted as a date for tolling. Just in an ordinary case, if there was a stay granted like that, and a couple of weeks later, they dissolved the stay and decided no notice or whatever, then, I mean, in other words, so I guess I just don't understand exactly. The stay was a preclusion of him sending out notice. But if there was no stay, it wasn't that he had to send out the notice. So he just determined not to address the motion for conditional certification. So let's say then he dissolves the stay. How are we going to address it? And it takes him four months to figure out what to do. What then? Right. And that may be a case where equitable tolling past the stay would not be appropriate, but that's certainly not the facts of this case. Stay, stay in place here. So the stay stayed in place until he granted the motion to dismiss. How long was that stay for, that period of stay? I think a period of something like March of, sorry, let me get the exact answer. So the court stayed the motion on March 1st of 2018. And then the court granted the defendant's motion to dismiss on September 18th, 2018. And during the hearing, where that's what, six months?  But as a part of that hearing, we once again raised the need for equitable tolling. Because Judge Wolf made it very clear that. I understand the theory about the stay period being a tollable period. But if we agreed with you there, would that make any difference in the case? Because that's only a six month period. No, I'm saying that it needs to go further. I know you're saying, I understand you are, but I'm asking, if we agreed with you that the stay period was a tollable period, would that make a difference in this case? I think that six month period by itself would not save the claims of the opt-in period. What's another chunk of time that, like the stay period, makes sense to count as a tollable period? The rest of the time between the date that the motion to dismiss was granted to the time where Judge Wolf actually authorized us to issue notice. And the reason for that is because despite the fact that we once again raised the need for equitable tolling, Judge Wolf very specifically said, I am not going to get to the equitable tolling issue. I am not going to get to the conditional certification issue until we have an operative claim in this case. A case that provides what should have happened, as an example, would be Jones versus Giant Eagle Foods in the Middle District of Pennsylvania, where, like here, there were numerous rounds of motion to dismiss briefing. And the court, in that case, granted equitable tolling throughout that period. And as a result, despite the fact that there had been litigation delays and procedural delays, the opt-in plaintiffs, who did not know about the case through no fault of their own, were still able to participate, unlike here. Thank you. Thank you. Thank you, counsel. That concludes argument in this case. All rise. This session is part of the United States Court of Appeals that states the United States of America and this honorable court.